IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH GARVEY, **Plaintiff** | No. 3:08cv2217 |
| v. | (Judge Munley) |
| JERRY C. MARTINEZ, WARDEN, Defendant | |

## MEMORANDUM

Before the court is Defendant Jerry C. Martinez's motion to dismiss, or in the alternative, motion for summary judgment (Doc. 21). Having been fully briefed, the matter is ripe for disposition.

## BACKGROUND

This is a Bivens[1] civil rights action filed by Plaintiff Joseph Garvey alleging inadequate medical treatment while confined at the Low Security Correctional Institution – Allenwood ("LSCI – Allenwood"). (Compl. at 1 (Doc. 1)). Plaintiff alleges that he was denied adequate medical care by Defendant Warden Jerry C. Martinez. (Id.)

Plaintiff was incarcerated at the United States Penitentiary – Canaan ("USP – Canaan") from May 15, 2007 until March 6, 2008, when he was transferred to LSCI – Allenwood. (Attach. 1 to Def.'s Ex. 1 (Doc. 25-2 at 6)). Plaintiff remained at LSCI – Allenwood until May 4, 2009, when he was transferred to the Federal Correctional Institution in Elkton, Ohio ("FCI – Elkton") for participation in a residential drug rehabilitation program. (Def.'s Ex. 1 at ¶3 (Doc. 25-2 at 4); Attach. 1 to Def.'s Ex. 1 (Doc. 25-2 at

---

[1] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (holding that a violation of an individual's constitutional rights by a federal agent acting under color of his authority gives rise to a cause of action for damages).

6)). His projected release date is March 3, 2012, via good conduct time release. (Def.'s Statement of Material Facts at ¶8 (Doc. 26)).

On September 15, 2007, while at USP – Canaan, plaintiff fell while jogging and injured his right knee. (Pl.'s Resp. to Def.'s Mot. to Dismiss at ¶¶ 11, 12 (Doc. 33)). He was examined that same day by medical services and diagnosed with a "right knee sprain." (Id. at ¶ 12; Pl.'s Ex. 8 (Doc. 33 at 14)). Follow-up examinations were performed on the following dates: September 24, 2007, October 12, 2007, and November 13, 2007. (Pl.'s Ex. 3 (Doc. 33 at 9); Pl.'s Ex. 9-A (Doc. 33 at 15); Pl.'s Ex. 9-C (Doc. 33 at 16)). An X-Ray report dated September 28, 2007 stated that there was "abnormal small suprapatellar joint effusion; mild narrowing of medial femorotibial joint; tiny calcification lateral to fibular head may represent a chip fracture." (Pl.'s Ex. 3 (Doc. 33 at 9)). A follow-up X-Ray report dated December 18, 2007 showed no findings. (Id.)

On February 16, 2008, plaintiff submitted a request for an informal resolution, pursuant to Federal Bureau of Prisons Program Statement § 1330.13, seeking further treatment for his knee injuries. (Pl.'s Ex. 1 (Doc. 33 at 7)). On February 20, 2008, plaintiff was re-examined. (Pl.'s Ex. 3 (Doc. 33 at 9)). He was told that his case would be presented to the Utilization Review Committee to obtain a referral for a magnetic resonance image ("MRI") of his knee. (Id.) On February 25, 2008, a response to plaintiff's request for an informal resolution was issued, stating that no resolution was reached and that plaintiff had already been examined by a medical professional. (Pl.'s Ex. 1 (Doc. 33 at 7)). On February 27, 2008, plaintiff submitted a request for an administrative remedy to the Warden of USP – Canaan, Ronnie R. Holt. (Pl.'s Ex. 2 (Doc. 33 at 8)).

2

On March 6, 2008, plaintiff was transferred to LSCI – Allenwood. (Pl.'s Ex. 3 (Doc. 33 at 9)). On March 12, 2008, Warden Holt issued a response for informational purposes, stating that plaintiff had been transferred before an MRI could be scheduled at USP – Canaan. (Id.) On March 24, 2008, plaintiff appealed Warden Holt's decision to the Regional Director, D. Scott Dodrill. (Pl.'s Ex. 4 (Doc. 33 at 10)).

On April 15, 2008, plaintiff completed a Sick Call sign-up requesting an appointment and indicating on the sign-up sheet that he had previously requested an appointment by mail but had not yet been seen. (Pl.'s Ex. 9E (Doc. 33 at 17)). On April 23, 2008, Mr. Dodrill denied plaintiff's appeal because he believed that plaintiff had not yet requested to be seen at LSCI – Allenwood. (Pl.'s Ex. 5 (Doc. 33 at 11)). He informed plaintiff that he must request to be seen by the medical staff at his current institution for any referrals or continuation of previous treatment plans. (Id.)

On May 16, 2008, plaintiff filed another appeal with the Administrator of National Inmate Appeals, Harrell Watts. (Pl.'s Ex. 6 (Doc. 33 at 12)). Plaintiff noted that, contrary to Mr. Dodrill's assessment of the situation, he had in fact been attempting to make a medical appointment at LSCI – Allenwood. (Id.) Plaintiff also alleged that when he was eventually seen by a physician's assistant, he was told that knee surgery was elective surgery. (Id.)

On August 22, 2008, plaintiff was evaluated by an in-house orthopedist, Dr. Ball. (Pl.'s Ex. 10-B (Doc. 33 at 37)). Dr. Ball requested an MRI of plaintiff's right knee and a follow-up consult with an orthopedic surgeon to take place after the results of the MRI were available. (Pl.'s Ex. 10-A (Doc. 33 at 36)).

On September 12, 2008, Mr. Watts issued a response for informational purposes to plaintiff's final administrative appeal. (Pl.'s Ex. 7 (Doc. 33 at 13)). He noted that plaintiff was on a list to be seen by an orthopedic specialist and that once the appointment occurred, a determination would be made regarding a treatment plan. (Id.) On September 15, 2008, plaintiff was seen by a physician's assistant, Charles Craig. (Pl.'s Ex. 9-I (Doc. 33 at 21)). Mr. Craig's report noted that an MRI had been requested and that he would notify the staff to schedule it. (Id.)

On October 02, 2008, plaintiff was seen by Dr. James Brady. (Pl.'s Ex. 9-J (Doc. 33 at 22); Pl.'s Ex. 9-K (Doc. 33 at 23)). At the time of this appointment Dr. Brady had not yet seen any records from Dr. Ball. (Pl.'s Ex. 9-J (Doc. 33 at 22)). Dr. Brady noted that plaintiff was experiencing knee pain, but that a musculoskeletal exam yielded normal results. (Id.) Accordingly, Dr. Brady prescribed strengthening exercises and deferred the MRI. (Pl.'s Ex. 9-K (Doc. 33 at 23)). He directed plaintiff to follow up with Sick Call and the Chronic Care Clinic as needed. (Pl.'s Ex. 9-J (Doc. 33 at 22)). Plaintiff alleges that during this appointment Dr. Brady stated, "there is no money to cure your problem with your knee." (Compl. at 3 (Doc. 1)).

On October 15, 2008, plaintiff filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the Middle District of Pennsylvania. (Pet. for Writ of Habeas Corpus, Case No. 3:08cv1897, October 15, 2008). During October 2008, plaintiff continued to complain of knee pain and was scheduled for an MRI, which was conducted on October 27, 2008. (Pl.'s Ex. 11 (Doc. 33 at 38)). The MRI report indicated a diagnosis of an ACL tear and post medial meniscus tear.

(Id.) The report was sent electronically to Dr. Brady on October 28, 2008. (Id.)

On October 31, 2008, this court dismissed plaintiff's petition for a writ of habeas corpus stating, "the appropriate vehicle with which to challenge the prison's action is a civil rights lawsuit filed pursuant to 42 U.S.C. § 1983." (Memorandum and Order of Judge Munley, Case No. 3:08cv1897, October 31, 2008). Plaintiff filed the pending case on December 11, 2008 seeking the results of the MRI of his right knee, a consultation with an orthopedic doctor, and surgery or other treatment recommended by said specialist. (Compl. at 3-4).

Plaintiff was seen by Mr. Craig on January 22, 2009 for a follow-up appointment. (Pl.'s Ex. 9-O (Doc. 33 at 27)). The next day plaintiff was seen by Dr. Ball, who recommended knee surgery. (Pl.'s Ex. 9-P (Doc. 33 at 28)). The medical records reflect that Mr. Craig placed a surgical consult that same day, but it was deferred by the Utilization Review Committee on or before March 04, 2009 because the request did not include a sufficient description of the situation. (Id.) Mr. Craig rewrote the consult on March 18, 2009. (Pl.'s Ex. 9-Q (Doc. 33 at 29)).

On May 04, 2009, plaintiff was transferred to FCI – Elkton. (Def.'s Ex. 1 at ¶ 3 (Doc. 25-2)). On May 19, 2009, he was seen again for his knee pain by another physician's assistant, Gary Bullock. (Pl.'s Ex. 9-R (Doc. 33 at 30)). Mr. Bullock ordered a follow-up for a refill of pain medication. (Id.)

On June 02, 2009, plaintiff was seen by M. Sidhom, M.L.P. (Pl.'s Ex. 9-S (Doc. 33 at 31)). The medical record from this visit acknowledged that plaintiff had a torn ACL and meniscus, and that an orthopedic surgeon had

recommended surgery before plaintiff was transferred to FCI – Elkton.  (Id.) At the time of this appointment plaintiff was wearing a knee brace.  (Id.)

Plaintiff was seen by Mr. Bullock several more times on June 05, June 18, and June 23, 2009.  (Pl.'s Ex. 9-T (Doc. 33 at 32); Pl.'s Ex. 9-U (Doc. 33 at 33); Pl.'s Ex. 9-V (Doc. 33 at 34)).  After the June 23, 2009 appointment (Pl.'s Ex. 9-W (Doc. 33 at 35)) Mr. Bullock requested a consult with an orthopedist. No medical records beyond this date have been provided.

Defendant Martinez is employed by the United States Department of Justice and is currently Warden and Chief Executive Officer of LSCI – Allenwood.  (Def.'s Statement of Material Facts at ¶ 9 (Doc. 26)).  He has been the Warden at LSCI – Allenwood since November 11, 2007.  (Id. at ¶ 10).  Defendant is the official custodian of all inmates at LSCI – Allenwood. (Id. at ¶ 11).  As such, he is responsible for their care, supervision and control.  (Id. at ¶ 12).  Defendant is responsible for the overall orderly operation of the institution.  (Id. at ¶ 13).  He contends that he is not involved in the day to day issues involving the provision of healthcare to inmates.  (Id. at ¶ 14).  He further contends that he has no authority to require or deny an inmate the provision of any particular form of medical treatment.  (Id. at ¶ 15).  These factual representations about the nature of defendant's responsibilities and authority were not contested by plaintiff in his response to defendant's motion.  (See Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 33)).

Plaintiff alleges that defendant's denial of treatment violated plaintiff's constitutional rights, including his Fifth Amendment right to fair and equal treatment and his Eighth Amendment right to be free from cruel and

6

unusual punishment. (Pl.'s Resp. to Def.'s Mot. to Dismiss at ¶¶ 18 to 21 (Doc. 33)).  However, plaintiff makes no factual assertion that defendant had any direct decision-making role in relation to plaintiff's medical care. (See Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 33)).  Further, defendant's name does not appear anywhere in the administrative record of plaintiff's appeal process.  (See id.).  Plaintiff contends that defendant knew about the issues raised in the complaint because plaintiff exhausted all administrative remedies and because, after filing the complaint in this case, plaintiff sent a settlement letter to defendant, to which defendant did not respond.  (Id. at ¶ 17).

On June 12, 2009, defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, motion for summary judgment under Federal Rule of Civil Procedure 56(b), bringing this case to its present posture.  (Def.'s Mot. to Dismiss (Doc. 21)).

**JURISDICTION**

As this case is brought pursuant to 42 U.S.C. § 1983 for constitutional violations we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**LEGAL STANDARD**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested.  Granting the motion is appropriate if, accepting as true all the facts alleged in the complaint, the plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

7

The Third Circuit interprets Twombly to require the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaints. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35.

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (citation omitted). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." Id.

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). However, "we are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949-50 (2009) (internal quotations omitted).

To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**DISCUSSION**

**A.   Mootness of Plaintiff's Claim as to Defendant Martinez**

Defendant argues that the pending claim should be dismissed as moot as against defendant because plaintiff is no longer housed at LSCI – Allenwood, where defendant serves as warden.  "If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996).  Plaintiff seeks a consultation with an orthopedic doctor, and surgery or other treatment recommended by said specialist.  Plaintiff's transfer to FCI – Elkton prevents the court from providing the requested relief by granting an injunction against defendant, a warden at LSCI – Allenwood with no authority over the officials and staff at FCI – Elkton.

To maintain a standing claim for injunctive relief where the court is unable to grant the requested relief, plaintiff's case must be one that is "capable of repetition, yet evading review." Murphy v. Hunt, 455 U.S. 478, 482 (1982) (citing Weinstein v. Bradford, 423 U.S. 147, 149 (1975)).  This scenario is limited to cases that satisfy two elements: " '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation

9

or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.' " Murphy, 455 U.S. at 482 (quoting Weinstein, 423 U.S. at 149). A mere possibility of repetition is not sufficient to meet this standard. Murphy, 455 U.S. at 482. Rather, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." Murphy, 455 U.S. at 482 (quoting Weinstein, 423 U.S. at 149).

Accepting plaintiff's factual allegations as true and drawing all reasonable inferences in favor of plaintiff, plaintiff's claim is not "capable of repetition, yet evading review." It does not lend itself to evading review because the alleged conduct has been occurring for more than two years – long enough to allow the matter to be fully litigated prior to cessation of the conduct. Further, there is no "demonstrated probability" that plaintiff would be returned to LSCI – Allenwood and denied adequate medical treatment, because he is currently participating in a rehabilitation program at FCI – Elkton. A mere possibility of return is not sufficient to allow the claim to proceed. Accordingly, plaintiff's claim will be dismissed as moot as to the sole named defendant.

**B.   Personal Involvement of Defendant Martinez**

Defendant argues in the alternative that the claim should be dismissed because plaintiff has failed to allege personal involvement by defendant, which is a necessary component of deliberate indifference to a serious medical need. A prison official's deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment because the government has an "obligation to provide medical care for those whom

it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976). A prisoner "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). In analyzing deliberate indifference, a court must determine whether the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official "knows of and disregards an excessive risk to inmate health or safety." Id. at 837.

A civil rights claim such as this can not be premised on *respondeat superior*, or "supervisory liability." Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) ("Respondent's conception of 'supervisory liability' is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a Bivens action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer."). To establish liability for deprivation of a constitutional right, plaintiff must demonstrate personal involvement by defendant. Rode v. Delarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Such involvement may be established through: 1) personal direction or actual participation by the defendant in the misconduct; or 2) knowledge of and acquiescence in the misconduct. Id.

Further, a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when the inmate is already receiving treatment by the prison's medical staff. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993). The Court of Appeals

for the Third Circuit explained that a prison's need for efficient division of labor suggests that where a prisoner is being treated by medical personnel, "a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

Defendant argues that plaintiff has failed to allege any personal involvement by defendant and that the claim should therefore be dismissed. Defendant emphasizes that he is only mentioned in the caption and the second paragraph of the Complaint. Defendant also asserts that the Complaint is devoid of any allegation that he was involved in decisions regarding plaintiff's medical care. Plaintiff argues that defendant was personally involved in the deprivation of adequate medical treatment because of his knowledge and acquiescence in the matter. He argues that defendant was aware of the situation because plaintiff exhausted his administrative remedies before filing his claim and because plaintiff sent to defendant a settlement letter after his claim was filed, to which defendant did not respond.

Plaintiff's argument that defendant was aware of the situation because he exhausted his administrative remedies is insufficient to establish deliberate indifference. See Durmer, 991 F.2d at 69 (holding in a similar case that the warden and state commissioner for corrections were not deliberately indifferent, where "[n]either of these defendants, however, [was] a physician, and neither [could] be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."); Whetstone v. Ellers, No. 3:08-CV-2306, 2009 WL 3055354, at *8 (M.D. Pa.

Sept. 24, 2009) ("In the Third Circuit, merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim.").

Further, as the warden of LSCI – Allenwood, defendant was never directly involved in plaintiff's grievance process. Plaintiff submitted his first formal request for an administrative remedy while he was still incarcerated at USP – Canaan, received a response from the warden at that location, and continued with further appeals. Grievances were never addressed to defendant and he never issued any response to them.

Plaintiff did produce one letter to defendant which described the situation but it was not sent until after plaintiff's claim was filed. Defendant correctly notes that receipt of such a letter could not have established personal involvement regarding a previously filed claim. Notwithstanding this problem with timing, plaintiff's letter proposing settlement is at best analogous to a grievance submitted to the warden, which for the reasons above would not be sufficient to establish personal involvement. See Durmer, 991 F.2d at 69; Whetstone, 2009 WL 3055354, at *8.

Plaintiff's claim will therefore be dismissed as to defendant because, giving plaintiff all favorable inferences, he failed to describe any facts to raise a reasonable expectation that discovery would reveal evidence of personal involvement of defendant, and respondeat superior cannot form the basis of a civil rights action. To the extent that plaintiff also claims a violation of equal protection under the Fifth Amendment, that too will be dismissed for the same reason; defendant had no personal involvement in the alleged wrongdoing. See Iqbal, 129 S. Ct. at 1949.

**CONCLUSION**

Because plaintiff's claim has been rendered moot as to defendant and because plaintiff failed to describe any facts to raise a reasonable expectation that discovery would reveal evidence of defendant's personal involvement, plaintiff's claims will be dismissed. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH GARVEY,** | : | No. 3:08cv2217 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| **JERRY C. MARTINEZ, WARDEN,** | : | |
| Defendant | : | |

## ORDER

**AND NOW**, to wit, this  11th  day of February 2010, it is hereby **ORDERED** that defendant's motion to dismiss the complaint (Doc. 21) is **GRANTED**. The Clerk of Court is directed to close the case.

**BY THE COURT:**

 s/ James M. Munley 

**JUDGE JAMES M. MUNLEY**
**United States District Court**

15